IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAYLA W., by and through her Parent, CATRINA J., | : :  : |
| Plaintiffs, | : CIVIL ACTION : : No. 20-6082 |
| v. | : : |
| CHICHESTER SCHOOL DISTRICT, | : : : |
| Defendant. | : : |

**February 18th, 2022**                                                                                   Anita B. Brody, J.

### **MEMORANDUM**[1]

This action has been brought by Kayla W. through her Parent Catrina J. ("Parent"), against the Chichester School District ("the District"). Parent alleges that the District failed to provide Kayla with a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.[2] This action stems from Parent's filing a due process complaint. Following a three-day virtual due process hearing, the assigned Pennsylvania

---

[1] For a glossary of terms used, see Appendix A.

[2] The IDEA requires states receiving federal funding to provide a FAPE to all disabled children residing within the State. 20 U.S.C. § 1412(a)(1). Section 504 of the RA prohibits discrimination on the basis of disability in federally funded programs. 29 U.S.C. § 794(a). "[W]hen a state fails to provide a disabled child with a free and appropriate public education, it violates the IDEA. However, it also violates the RA because it is denying a disabled child a guaranteed education merely because of the child's disability." *Andrew M. v. Del. Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007).

Due Process Hearing Officer ("Hearing Officer") issued her decision. Parent objects to the Hearing Officer's decision on several grounds. Currently before me are the parties' cross-motions for judgment on the administrative record. I exercise jurisdiction to review the Hearing Officer's decision under 20 U.S.C. § 1415(i)(2). For the reasons set forth below, I will grant partial judgment for Parent and Kayla, and partial judgment for the District.

## I. BACKGROUND[3]

### a. Factual Background

Kayla entered the District in September 2016 as a fifth-grade student. H.O.D. ¶ 2. As Kayla attended a small religious school for kindergarten through fourth grade, this was Kayla's first experience with public school, and she struggled to adjust to the large classroom size and classroom transitions. *Id.* ¶¶ 2, 5. Throughout her fifth-grade year, Kayla demonstrated consistent difficulty with academic work, particularly in Math and English. *Id.* ¶ 7; S-21 at 1. Kayla also struggled with attention and focus and began to exhibit problematic and disruptive behaviors. H.O.D. ¶¶ 6, 10. During the 2016-17 school year, Kayla received a total of fourteen days of out of school suspension, in addition to multiple lunch and Saturday detentions. *Id.* ¶ 12.

In February 2017, Kayla and Parent entered a period of family crisis and instability when Kayla's brother was diagnosed with leukemia. *Id.* ¶ 13; N.T. 298–99. Kayla often stayed with relatives while Parent stayed with Kayla's brother in intensive care. H.O.D. ¶ 13. During this period, Kayla's behavioral and academic struggles intensified. *Id.* ¶ 22; S-2. The District was aware of this family crisis and referred Kayla and Parent to the Student Assistance Program,

---

[3] Citations in this section will generally be to the Hearing Officer's factual findings, which can be found at pages 3-11 of the Hearing Officer's Decision ("H.O.D. ¶ _"). This section will also refer to hearing notes of testimony ("N.T._") and stipulations between the parties ("S-_") in circumstances where the Hearing Officer failed to make a finding on a relevant factual issue.

providing access to a counselor and a social worker. *Id.* ¶ 14; N.T. 488.

In early March 2017, the District placed a telephone call to Parent to inform her that Kayla had been suspended again. N.T. 349–51. During that call, Parent verbally requested that the District evaluate Kayla for potential disabilities. H.O.D. ¶ 15. On March 15, 2017, the District issued a "Permission to Evaluate—Evaluation Request Form" ("PTE-ERF"), asking Parent to restate her reasons for requesting an evaluation. *Id.* ¶ 15; S-4. Despite knowing that Kayla was staying with relatives while Parent was at the hospital with her sick child, the District provided a single paper copy of the PTE-ERF and gave it to Kayla to give to Parent. N.T. 134. Parent did not receive the form. N.T. 302. District protocol required that staff make multiple timely attempts to follow up with Parent about the PTE-ERF. N.T. 134–35. The District failed to follow up directly with Parent for nearly two months. *Id.*; S-27. On May 12, 2017, school psychologist Antoinette Rzasa emailed Parent the PTE-ERF. S-27. The District never confirmed receipt via telephone call or other means. N.T. 134–35. Parent did not sign or return the form at that time. N.T. 302–03.

On June 8, 2017, Kayla was involved in a physical altercation with a male peer in which an intervening teacher was struck. H.O.D. ¶ 20. On June 15, 2017, in response to this incident, the District determined that Kayla should indeed be evaluated for possible disabilities and completed a referral to its multi-disciplinary team ("MDT"). S-7. The District also initiated pre-expulsion proceedings against Kayla. H.O.D. ¶ 23. On August 7, 2017, the District held an expulsion hearing and decided to refer Kayla for a 45-day diagnostic placement at the Delaware County Intermediate Unit ("DCIU"). *Id.*; S-15. On August 15, 2017, the District met with Parent to secure her consent to this diagnostic placement. H.O.D. ¶ 23. Only then did the District issue a Permission to Evaluation ("PTE") form, which Parent signed. S-6.

Kayla began sixth grade at the DCIU. H.O.D. ¶ 28. Kayla was placed in a small classroom for instruction, and provided with emotional supports, including individual and group counseling. *Id*. ¶ 32. On September 6, 2017, Kayla was evaluated by a DCIU psychiatrist, who concluded that Kayla suffered from Adjustment Disorder with Mixed Disturbance of Emotions and Conduct and Attention-Deficit/Hyperactivity Disorder. *Id.* ¶ 30. The DCIU also conducted its IDEA and Section 504 evaluation, issuing an Evaluation Report ("ER") on October 12, 2017. *Id.* ¶ 34; S-1. The DCIU determined that Kayla was not disabled and was ineligible for special education services under IDEA and accommodations under Section 504. H.O.D. ¶ 44. The District subsequently adopted the DCIU's ER without an MDT meeting and without consultation with Parent. *Id.* ¶ 46 The District did not issue a Notice of Recommended Educational Placement ("NOREP") to accompany its finding of non-eligibility. *Id.* Parent was not provided with a copy of the ER until December 2017. N.T. 312–13; S-29.

By the time Parent was provided with a copy of the ER, Kayla had already been disenrolled from the District. H.O.D. ¶ 44. In November 2017, the District opted to disenroll Kayla because her family "no longer resid[ed] at the address of record" within its boundaries. *Id.*; S-17. In fact, Kayla and her family no longer resided anywhere; they were homeless after being forced to leave their rental property due to infestation and lack of heat. N.T. 314–15. Kayla and her siblings were temporarily placed in the homes of different family members living outside the District's boundaries. *Id.* at 316–17. Parent contacted the District to ask that, despite the family's temporary homelessness, Kayla be allowed to return to her home school while Parent worked to secure new in-boundary housing and to care for Kayla's terminally ill brother. *Id.* 317. Notwithstanding Parent's request and the family's difficult circumstances, the District disenrolled Kayla effective November 15, 2017. S-18.

4

In early 2018, Parent secured housing for her family in the Upper Darby School District ("UDSD"). N.T. 319–20. UDSD evaluated Kayla for services, found her to be eligible for special education, and provided her with an Individualized Education Plan ("IEP"). H.O.D. ¶¶ 50–56; S-22. On March 13, 2020, Parent filed a due process complaint with the Pennsylvania Office for Dispute Resolution, alleging that the District denied Kayla a free, appropriate public education ("FAPE") and seeking compensatory education. ECF No. 4-12 at 1.

### b. Procedural Background

Parent's Due Process Complaint was the subject of a three-day virtual evidentiary hearing, held May 8, 2020 and July 15 to 16, 2020. On September 3, 2020, the Hearing Officer issued a written decision on the merits of the claims made by Parent. FODR No. 23543-19-20.

The Hearing Officer denied all of Parent's claims. H.O.D. at 21. The Hearing Officer concluded that the District had not violated its "Child Find" obligations in failing to evaluate Kayla until October 2017.[4] *Id.* at 19. Despite Kayla's failing grades and behavioral problems, the Hearing Officer found that the District was reasonable in not considering whether Kayla had a disability prior to Parent's March 2017 request for evaluation. *Id.* at 18. The Hearing Officer acknowledged that the District did not issue a proper PTE form in March 2017 and was slow to follow up with Parent, but excused those lapses by concluding that Parent's failure to sign the PTE-ERF and PTE until August 2017 was "strongly indicative that consent would not have been provided in the spring." *Id.* at 19. Finally, the Hearing Officer determined that the DCIU's

---

4 "School districts have a continuing obligation under the IDEA and § 504 to identify and evaluate all students who are reasonably suspected of a having a disability under the statutes." *P.P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 738 (3d Cir. 2009). This obligation to identify children eligible for services is commonly called "child find." Local Educational Agencies ("LEAs") must fulfill this obligation within a reasonable time after notice of behavior that suggests a disability. *D.K. v. Abington School District*, 696 F.3d 233, 249 (3d Cir. 2012). LEAs are not required to identify eligible children "at the earliest possible moment." *Id.*

5

evaluation and report, and the District's adoption of it, satisfied both IDEA and Section 504, and that their conclusion that Kayla was ineligible for special education services and a 504 plan was thus reasonable. *Id.* at 19–20. The Hearing Officer admitted that the District failed to convene an MDT meeting to discuss the ER but concluded that this failure—and any failures in the resulting ER—caused Kayla no substantive harm because the District subsequently disenrolled her. *Id.* at 20. The Hearing Officer therefore determined that Kayla was ineligible for compensatory education. *Id.* at 21.

In response, Parent filed the instant action against the District on December 2, 2020. Parent now moves for judgment on the administrative record, asking this Court to reverse the H.O.D. and award Kayla compensatory education for the full time Kayla was enrolled in the District during the 2016-17 and 2017-18 school years. Specifically, Parent alleges that the H.O.D. "erred in failing to conclude that: (1) the District violated its Child-Find duties; (2) the District/DCIU Evaluation was improper, inaccurate, and untimely; (3) the District's eligibility process was erroneous; (4) the District violated IDEA and Section 504; and (5) the District owes substantial compensatory education to Kayla." Pl.'s Br. 3.

The District also moves for judgment on the administrative record, claiming that Parent has failed to prove a Child Find violation, asserting that Parent was not denied meaningful participation in decisions about Kayla's education, and requesting that the Court affirm the H.O.D. in its entirety. Def.'s Br. [7–10].

## II.    LEGAL STANDARD

"When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as 'modified de novo' review." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). Under this

standard, the district court must give "due weight" to the findings of the administrative hearing officer. *Id.* "Factual findings from the administrative proceedings are to be considered prima facie correct. If a reviewing court fails to adhere to them, it is obliged to explain why. The court is not, however, to substitute its own notions of sound educational policy for those of local school authorities." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (citation omitted) (internal quotation marks omitted). "[S]tatute of limitations claims and . . . claims for compensatory education and tuition reimbursement are subject to plenary review as conclusions of law. . . . [W]hether the District fulfilled its FAPE obligations—[is] subject to clear error review as [a] question[] of fact." *P.P.*, 585 F.3d at 735.

"Within the confines of these standards, a district court is authorized to make findings based on the preponderance of the evidence and grant the relief it deems appropriate . . . ." *D.S.*, 602 F.3d at 564. "[T]he party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012).

### III.   DISCUSSION

In moving for judgment on the administrative record, Parent asserts that the Hearing Officer failed to identify the District's substantive and procedural violations of the IDEA and Section 504. The Court need only reach Parent's procedural arguments.

#### a.   The District's Procedural Errors

Parent alleges that the District's process in evaluating Kayla violated both the IDEA and Section 504 by failing to ensure parental involvement in educational decision-making—thus denying Kayla a FAPE—and by disregarding the IDEA's statutorily imposed procedural requirements.

### i. Procedural FAPE under the IDEA

The IDEA requires states receiving federal funding to provide a FAPE to all disabled children residing within the State. 20 U.S.C. § 1412(a)(1). Courts considering a school district's liability for IDEA violations must engage in a two-step inquiry: "(1) Has the school district complied with the procedures set forth in IDEA?; and (2) Has the school district fulfilled its obligation to provide the student with a FAPE?" *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010) (citing *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982)). Although a procedural violation of the IDEA is not a *per se* denial of a FAPE, procedural violations may rise to the level of a denial of FAPE if the LEA's procedural error impedes a parent's opportunity to engage in their child's educational progress and to make meaningful decisions about that child's educational experience. 20 U.S.C. § 1415(f)(3)(E); 34 C.F.R. § 300.513(a)(2); *see also D.S.*, 602 F.3d at 564–67 ("A procedural violation is actionable under the IDEA . . . if it . . . seriously deprives parents of their participation rights.").

Parent argues that the District significantly impaired her involvement in making decisions about Kayla's education when, despite an awareness of the family's living situation, it failed to ensure timely receipt of the PTE-ERF and PTE. Pl.'s Br. 18, 25. The District counters that Parent's own neglect of Kayla's education is to blame for any delays. Def.'s Br. [10].

The process by which the District initiated Kayla's evaluation contained procedural errors that substantively impaired Parent's ability to participate meaningfully in her daughter's educational progress.

First, the District responded to Parent's verbal request for evaluation by providing Kayla with a print copy of the PTE-ERF. As the District had already referred Kayla and Parent to the Student Assistance Program, the District was well aware of the family's ongoing difficulties. The

District knew or should have known that sending a print copy of the form "home" with Kayla—at a time when she was neither living at home nor living with Parent—was an ineffective means of response to Parent's request for an evaluation. Given the disruption to Kayla's living situation, it is unsurprising that Parent never received the paper copy of the PTE-ERF. This failure to timely provide the PTE-ERF caused an unreasonable delay at a time when Kayla's need for support was increasing. This failure constituted a constructive denial of access by Parent to the PTE-ERF form—the one means of initiating the evaluation process.

Second, the District failed to adhere to its own policies regarding follow up communications with parents after a PTE-ERF is issued. At Kayla's due process hearing, the District's Director of Pupil Services described the District's protocol for following up with parents after a PTE-ERF is issued:

> [T]he psychologist is supposed to do numerous attempts, because we don't want to do just one attempt and done. We want to try *at least three times*. Usually it could be *through a phone call* . . . . [O]ur psychologist is supposed to do three attempts for anything that we do.

N.T. 134–35 (emphasis added). Upon review of Kayla's case file, the Director admitted that the school psychologist's single email follow-up, two months after the paper PTE-ERF was issued to Kayla, "is the one [follow-up] that we found, unfortunately." *Id.* 134. The Director confirmed that the District's special education software allows school staff to generate multiple copies of relevant forms and to document every parent contact. *Id.* 135. Here, the District did not follow up three times. The District followed up once, via email, after two months had passed—two months in which Kayla continued to fail her core classes and in which she received three out of school suspensions and eleven in school or Saturday school suspensions. No follow-up phone call was made to Parent.

9

The Hearing Officer excused these procedural errors as having no substantive impact on Parent's engagement with Kayla's education. The Hearing Officer determined that the District's failings did not prevent Parent's involvement or delay Kayla's evaluation because "Parent's failure until August to sign the form in March that was provided is strongly indicative that consent would not have been provided in the spring."

This is an illogical conclusion given the facts of Kayla's case. Parent's March 2017 verbal request for an evaluation singlehandedly prompted the District to issue a PTE-ERF. Parent did not receive the PTE-ERF until May 2017, when it arrived via an email she does not recall receiving. In the midst of caring for a terminally ill child, Parent failed to sign the PTE-ERF in a timely fashion. The Hearing Officer's conclusion that Parent's failure to respond to a single email is proof of non-consent—despite Parent being the initiator of the evaluation process—is not entitled to deference from this Court. The District's failure to ensure timely receipt of the PTE-ERF after Parent requested an evaluation substantively impaired Parent's ability to make decisions about Kayla's education. As such, the District denied Kayla the FAPE to which she is entitled by law.[5]

### ii. IDEA procedures

The District's process in determining that Kayla was ineligible for services also violated multiple IDEA procedural requirements and safeguards.

---

[5] Because the District thus violated the IDEA by denying Kayla a FAPE, they also violated Section 504. Section 504 of the RA prohibits discrimination on the basis of disability in federally funded programs. 29 U.S.C. § 794(a). "[W]hen a state fails to provide a disabled child with a free and appropriate public education, it violates the IDEA. However, it also violates the RA because it is denying a disabled child a guaranteed education merely because of the child's disability." *Andrew M.*, 490 F.3d at 350.

The IDEA provides procedures to which LEAs must adhere after evaluating a child's eligibility for special services:

> Upon completion of the administration of assessments and other evaluation measures—
> (A) the determination of whether the child is a child with a disability as defined in section 1401(3) of this title and the educational needs of the child shall be made by a team of qualified professionals and the parent of the child in accordance with paragraph (5); and
> (B) a copy of the evaluation report and the documentation of determination of eligibility shall be given to the parent.

20 U.S.C.A. § 1414(b)(4); 34 C.F.R.§ 300.306(a)(1).

Furthermore, the IDEA affords parents several additional procedural safeguards. A parent has the right to:

> (1) examine all records and participate in all meetings with respect to the identification, evaluation, and educational placement of their child; (2) receive written notice whenever a school proposes to change or refuses to change an identification, evaluation, or educational placement of their child; and (3) participate in mediation to resolve any disputes arising under the IDEA.

*M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 339 (3d Cir. 2003) (citing 20 U.S.C. § 1415(b)(1)–(5)) (internal citations omitted). In Pennsylvania, school districts that propose changing—or refusing to change—a child's evaluation or placement status must provide the parent with a Notice of Recommended Education Placement ("NOREP") to satisfy the § 1415(b) notice requirement. *A.S. v. Colonial Sch. Dist.*, No. CV 19-2741, 2020 WL 6784350, at *2 (E.D. Pa. Nov. 18, 2020) (citing *T.R. v. Sch. Dist. of Philadelphia*, 223 F. Supp. 3d 321, 325 (E.D. Pa. 2016)). Pennsylvania law implementing IDEA also requires this MDT-parent collaboration. *See* 22 Pa. Code § 15.7(a) ("If the parents and the school district agree as to what related aids, services or accommodations should or should no longer be provided to the protected handicapped student, the district and parents shall enter into or modify a service agreement. The service agreement shall be written and executed by a representative of the school

district and one or both parents.").

Parent argues that the District's process in adopting the DCIU's determination of ineligibility violated the IDEA. Parent asserts that the District violated the IDEA in adopting an ER produced by a single psychologist, without engaging in a meeting with Parent and the MDT. Pl.'s Br. 28. Furthermore, Parent notes that she did not timely receive notice that the ER had been issued or a copy of the ER itself. Parent also notes that the District failed to issue the required NOREP describing their finding of ineligibility. *Id.* These procedural errors, Parent argues, "foreclosed Parent's legally protected right to meaningful participation in the IDEA/Section 504 process, and, as a result, again foreclosed the opportunity for a voice to speak on Kayla's behalf." *Id.* 28–29. The District's only response is to cite the Hearing Officer's finding that, although the District violated IDEA in failing to convene a group meeting with Parent to discuss the ER, Parent and Kayla suffered no substantive harm as a result. Def.'s Br. [8 n.3]. The Hearing Officer concluded that any potential harm to Kayla from the District's failure to hold a meeting and to issue a NOREP was cut short by the District's decision to disenroll Kayla after her family lost their home. H.O.D. at 20.

I will not defer to the Hearing Officer's conclusion. The District's *pro forma* consideration of the DCIU's ER lacked the statutorily required MDT meeting and engagement with Parent, and Parent and Kayla were substantively harmed by this error. Parent lost her opportunity to be informed about the process surrounding her child's evaluation. Parent also lost the opportunity to advocate for her child and to argue for a different conclusion—the conclusion subsequently reached by the Upper Darby School District. Kayla lost the benefit of services she may have received had the MDT convened and decided to expand upon the DCIU's evaluation. These harms are not *de minimis*, as the Hearing Officer suggests. The District subsequently

decided to ignore Parent's plea for forbearance and to disenroll Kayla when her family became homeless; this decision should not serve as a convenient basis for absolving the District from liability for the substantive harm caused by its prior IDEA and Section 504 violations.

### b. Kayla's Entitlement to Compensatory Education

Parent also argues that the Hearing Officer erred in failing to award Kayla compensatory education for the District's IDEA and Section 504 violations.

Compensatory education "aim[s] to place disabled children in the same position they would have occupied but for the school district's violations of IDEA," by providing the educational services children should have received in the first instance." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015). There is no requirement that "the district's behavior ... rise to the level of slothfulness or bad faith" for compensatory education to be an appropriate remedy. *M.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996). District Courts have "broad discretion" to fashion the appropriate compensatory remedy. *G.L.*, 802 F.3d at 620. "[A] claim for compensatory education is not rendered moot by an out-of-district move." *D.F.*, 694 F.3d at 497–98.

Parent argues that because the District failed to adhere to required procedures, Kayla is entitled to compensatory education for the entirety of her time at the District (that is, for the 2016-17 academic year as well as the 2017-18 academic year until her time of disenrollment). Pl.'s Br. 33. The District argues simply that this Court should affirm the Hearing Officer's determination that Kayla is not entitled to compensatory education because the District violated neither the IDEA nor Section 504. Def.'s Br. [10]–[11].

Having found that the District denied Kayla a FAPE by substantively interfering with Parent's involvement in Kayla's education and by failing to adhere to IDEA procedural

13

requirements, I find that Kayla is entitled to compensatory education. This Court's task, then, is to determine the extent of the remedy owed.

A student's right to compensatory education "accrue[s] from the point that the school district knows or should know" of the injury to the student, and should encompass "a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem." *G.L.*, 802 F.3d at 618–19 (quoting *M.C.*, 81 F.3d at 396–97). Courts may grant an award of full days of compensatory education when impractical to parse the exact number of hours a FAPE was denied or when the LEA demonstrated a complete failure to address a student's needs. *See Tyler W. ex rel. Daniel W. v. Upper Perkiomen Sch. Dist.*, 963 F. Supp. 2d 427, 439 (E.D. Pa. 2013) (Tucker, J.) (vacating hearing officer's grant of hours of compensatory education and replacing it with a grant of full days in case where student made "little to no academic progress" and where the LEA's failure to address student's needs "pervaded and undermined his entire school day"); *Damian J. v. School Dist. of Phila.*, No. 06–3866, 2008 WL 191176, at *7 n.16 (E.D. Pa.2008) (Sánchez, J.) (awarding full days of compensatory education for half a school year in case where LEA entirely failed to implement provisions of IEP and where "[p]arsing out the exact number of hours [the child] was not benefited by FAPE during the time period" was nearly impossible).

Although the District committed several procedural errors, the District first knew or should have known that they were failing to adhere to their own notice protocols, and thus substantively interfering with Parent's rights under the IDEA, on May 12, 2017, when school psychologist Antoinette Rzasa belatedly made direct contact with Parent. Kayla was disenrolled from the District effective November 15, 2017, representing a total of 188 impacted calendar days.

The Court must then subtract from this the number of days reasonably required for the District to rectify their initial error. School districts have 60 days to perform an evaluation after receiving parental consent, and a further 30 days to convene the required team meeting. 34 C.F.R.§§ 300.309, 300.323(c). Assuming parental consent for services is secured at that meeting, an IEP must be implemented within no more than 10 school days (or 14 calendar days) after the team meeting. *Id.* § 300.300(b). Therefore, the Court reasons that 104 calendar days is the period the District would reasonably require to rectify their error. As such, Kayla is entitled to 84 calendar days of compensatory education.[6] I direct the parties to confer on the manner in which the compensatory education must be provided.

### c. Parent and Kayla's Entitlement to Attorneys' Fees

The Court's final task is to consider Parent's request for attorneys' fees.

The IDEA provides that a district court may, in its discretion, award "reasonable attorneys' fees" to a prevailing party. 20 U.S.C. § 1415(i)(3)(B)(i)(I). A prevailing party is

---

[6] The District also argues that tolling agreements between the parties prevent Parent from litigating any claims prior to July 30, 2017 (and thus from claiming any compensation for injury prior to that date). This argument is unavailing.
   The IDEA places a two-year statute of limitations on parents' claims. 20 U.S.C. § 1415(f)(3)(C). As a result, parents must file their IDEA due process complaint "within two years of the date they knew or should have known of the violation, unless the state has its own statute of limitations, in which case the state's statute controls." *G.L.*, 802 F.3d at 609 (internal quotation marks omitted) (citing *D.K.*, 696 F.3d at 244 & n.2). However, the IDEA statute of limitations does not limit relief only to injuries that occurred in the two years before parents knew or should have known of the violation; plaintiffs are eligible for compensatory education for the entire period of IDEA violation, not simply that time falling within the statute of limitations period. *Id.* at 605.
   Here, Parent filed her due process complaint on March 13, 2020. H.O.D. at 2. The parties entered into three separate tolling agreements in late 2019 and early 2020, which ultimately tolled the IDEA statute of limitations from July 30, 2019 to March 6, 2020. ECF No. 10, Exs. A-C. The District argues that Kayla cannot recover compensatory education funds for any period more than two years before July 30, 2019 (i.e. for any period before July 30, 2017). Def.'s Br. [11]. Under Third Circuit law, however, Kayla is entitled to her full 84 days of compensatory education despite the fact that her injury began on May 12, 2017.

generally one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Courts determine whether a party is a prevailing party using a two-pronged test: "First, 'whether plaintiffs achieved relief,' and second, 'whether there is a causal connection between the litigation and the relief from the defendant.'" *Id.* (quoting *Wheeler v. Towanda Area Sch. Dist.*, 950 F.2d 128, 131 (3d Cir. 1991)).

Parent satisfies both prongs. In succeeding on her Motion for Judgment on the Administrative Record, which reverses the H.O.D. as to whether the District violated IDEA and Section 504 and as to Kayla's entitlement to compensatory education, Parent secures the majority of the relief sought in her Complaint. ECF No. 1. Furthermore, Parent would not have secured this outcome without the aid of the instant litigation. As such, I direct Parent and Kayla to file a petition for reasonable attorneys' fees, to be paid by the District.

### IV.  CONCLUSION

For the reasons stated above, I conclude that the District's procedural errors violated IDEA and Section 504, and that Kayla is entitled to 84 days of compensatory education. Accordingly, I will reverse the Hearing Officer's decision on these grounds, and I will grant partial judgment for Plaintiffs' during the period of May 12, 2017 through November 15, 2017. An appropriate order follows.

                                               *S/Anita B. Brody*
                                               ANITA B. BRODY, J.

# Appendix A

## Glossary of Terms

| | |
|---|---|
| **DCIU** | Delaware County Intermediate Unit |
| **ER** | Evaluation Report |
| **FAPE** | Free Appropriate Public Education |
| **H.O.D.** | Hearing Officer's Decision |
| **IEP** | Individualized Education Plan |
| **IDEA** | Individuals with Disabilities Education Act |
| **LEA** | Local Educational Agency |
| **MDT** | Multi-Disciplinary Team |
| **NOREP** | Notice of Recommended Educational Placement |
| **PTE** | Permission to Evaluate |
| **PTE-ERF** | Permission to Evaluate—Evaluation Request Form |
| **RA** | Rehabilitation Act |